**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DIRECTV, Inc.** ) | |
| **Plaintiff,** ) | **Case No. 03 C 8056** |
| ) | |
| **v.** ) | **Magistrate Judge Geraldine Soat Brown** |
| ) | |
| **RO REYES,** ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are three motions in limine filed by defendant Rolando Reyes ("Reyes")

regarding three of plaintiff DirecTV, Inc.'s ("DirecTV") proposed trial exhibits. [Dkt 44, 45, 46.]

For the reasons stated below, Defendant's Motions in Limine are granted because the declarations

that DirecTV submits do not satisfy the requirements of Fed. R. Evid. 902(11) to authenticate the

proposed trial exhibits. However, this ruling is without prejudice to DirecTV's submitting revised

declarations or presenting witnesses to testify live at trial to provide authentication for the exhibits.

## BACKGROUND

DirecTV brings this action under the Cable Communications Policy Act, 47 U.S.C. § 521 et

seq., and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-22. (Final Pretrial

Order ¶ 2.) DirecTV asserts that Reyes violated those provisions when he purchased two devices

(referred to as the "NextGen" and "UL Pro" devices) for the purpose of circumventing DirecTV's

encryption technology and obtaining access to DirecTV's satellite programming without payment

to DirecTV. (*Id.* at ¶ 3)

DirecTV encrypts, or electronically scrambles, its satellite transmissions to prevent unauthorized viewing of its satellite television programming. (*Id.* at ¶ 4(b).) DirecTV offers its television programming to customers on a subscription and pay-per-view basis only. (*Id.*) Each customer is required to obtain a DirecTV access card and other system hardware (including a small satellite dish), and to create an account with DirecTV. (*Id.*) Upon activation of the access card by DirecTV, the customer can receive and view in a decrypted format those channels to which the customer has subscribed or has otherwise arranged to purchase from DirecTV. (*Id.*)

DirecTV asserts that the "NextGen" and "UL Pro" devices were designed to permit the illegal modification of DirecTV access cards and to allow unauthorized access to DirecTV programming. (*Id.* at ¶ 3.) DirecTV claims that Reyes purchased these devices from a company known as Vector Technologies on or about December 4, 2000, and that these devices were shipped to Reyes by a company called Fulfillment Plus at his address, which the parties agree was 3660 N. Lake Shore Drive, Chicago, Illinois 60613 at that time. (*Id.* ¶¶ 3, 4(a); *see* Compl. ¶¶ 16, 18 [dkt 1]; Def.'s Mot. Lim. Ex. 1, Madvig Decl. ¶¶ 2, 6 [dkt 44].) DirecTV claims that Reyes violated provisions of the Communications Acts when he knowingly purchased these devices and used them to intercept DirecTV's programming. (*Id.* at ¶ 3.)

The current motions concern three business records declarations (which are numbered as exhibits) offered by DirecTV pursuant to Fed. R. Evid. 803(6) and 902(11) to authenticate certain of DirecTV's trial exhibits. The motions in limine are listed below on the left. DirecTV's proposed trial exhibits are listed below on the right.

2

| Business Record Declaration | Exhibits Supported by the Declaration |
|---|---|
| PX1<br>Scott Madvig<br>Fulfillment Plus, owner & operator | PX2 - Packing Slip |
| PX7<br>Jaime Sichler<br>DirecTV, employee ("responsibilities include supporting DirecTV's antiprivacy efforts") | PX3 - Reyes DirecTV account and billing history<br>PX4 - info for "pending" DirecTV account<br>PX5 - info for "pending" DirecTV account<br>PX6 - info for "pending" DirecTV account |
| PX8<br>Bruce Turner<br>d/b/a/ Vector Technologies, President | PX 8 (Att. A) - Receipt |

(Final Pretrial Order, Schedule A, Pl.'s Ex. List.)

## DISCUSSION

### 1.    Legal Standard for Business Records Declaration.

Rule 802 of the Federal Rules of Evidence provides that hearsay evidence is inadmissible, except as otherwise provided: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."[1] Fed. R. Evid. 803(6), commonly referred to as the "business records exception," is one of the exceptions to the hearsay rule in cases where the availability of the declarant is immaterial. This provision states:

---

[1] "Hearsay" is defined by Rule 801(c) of the Federal Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

(6) Records of Regularly Conducted Activity.–A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by the certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6). The business records exception allows the admission into evidence of information contained in business records that were (1) made at or near the time of the event recorded (2) by a person with knowledge (3) if they were kept in the course of a regularly conducted business activity and (4) if it was the regular practice of that business activity to make the record. (*Id.*) These elements must be demonstrated by the testimony of the custodian of the records or some other qualified witness, or by certification that complies with Fed. R. Evid. 902(11) (or other applicable rules). (*Id.*)

DirecTV has submitted the contested declarations pursuant to Rule 902(11), which allows a party to demonstrate the required elements of the business records exception through a declaration in lieu of the live testimony of the records custodian. Pursuant to Rule 902(11), the declaration of the "custodian or other qualified person" must certify that the record meets the requirements for a business record under Fed. R. Evid. 803(6). Specifically, the declaration must state that the record:

- (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
- (B) was kept in the course of the regularly conducted activity; and
- (C) was made by the regularly conducted activity as a regular practice.

Fed. R. Evid. 902(11).

4

The purpose of Rule 902(11), which was added to the Federal Rules of Evidence in 2000, is to establish a "procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness." Advisory Committee Notes, 2000 Amendments to Rule 902. As noted in a recent decision by one of the drafters of Rule 902(11):

> One of the most useful (though perhaps least noticed) accomplishments of the Judicial Conference's Advisory Committee on the Rules of Evidence during this Court's tenure as its Chairman was in adding a new Rule 902(11) to the self-authentication provisions of Rule 902. That new provision was intended to obviate the need for live witnesses to parade to the stand to support the admission into evidence of business records. . . . Too few lawyers have caught up with that valuable amendment, even though it became effective just over five years ago.

*United Asset Coverage, Inc. v. Avaya Inc.*, — F. Supp. 2d —, 2006 WL 126623 at *46 (N.D. Ill. Jan. 12, 2006) (Shadur, J.).

## II.    Reyes' Motion in Limine to Bar the Madvig Declaration

Plaintiff's Exhibit 1 is the declaration of Scott Madvig, the owner and operator of Fulfilment Plus, a packaging and distribution facility in Santa Ana, California. (Def.'s Mot. Lim. Ex. 1, Madvig Decl. ¶¶ 2, 7.) As DirecTV observes, the declaration itself is not to be submitted in evidence; rather, DirecTV offers the Madvig Declaration as a business records declaration under Fed. R. Evid. 902(11) for the purpose of authenticating Exhibit A to that declaration as a business record. That Exhibit is a "Packing Slip" that purports to record the shipment of the NextGen and UL Pro devices to Mr. Reyes at his home address on or about December 4, 2000. (Madvig Decl., Ex. A.) According to Mr. Madvig, Fulfillment Plus "provide[s] warehousing, packaging, and shipping services to . . . businesses selling devices over Internet web sites," including Vector Technologies, the purported seller of the devices at issue here. (Madvig Decl. ¶ 2; Final Pretrial Order ¶ 3.)

5

Reyes' motion lists eight objections to the Madvig Declaration. As DirecTV notes, Reyes' motion does not identify any specific requirement of Rules 803(6) or 902(11) with which the Madvig Declaration fails to comply. (Pl.'s Resp. Mot. Lim. Ex. 1 at 6.) [Dkt 48.] Three of Reyes' objections, however, are made on the basis of lack of foundation.[2] (Def.'s Mot. Lim. Ex. 1 ¶¶ 1, 2, 5.) These objections can reasonably be construed as arguing that the Madvig Declaration does not meet the requirements for the business records exception and authentication as set forth in Rules 803(6) and 902(11). These and Reyes' other objections are addressed in turn.

## A. "Custodian or Other Qualified Person."

The first issue is whether Mr. Madvig is a qualified witness under Rules 803(6) and 902(11), which require that the purported business record be authenticated by the testimony or declaration of a "custodian or other qualified person." A witness or declarant meets this requirement if he or she has knowledge of the procedures by which the record was created and maintained. *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998) (noting that the business records exception "require[s] that the

---

[2] These objections include the following:

1. The Declaration does not adequately state how and why Mr. Madvig could testify to the material contained in said Declaration. It does not state that the material is true, but states that "the information is true to the best of my knowledge". [sic]

2. No foundation has been laid for the testimony of Mr. Madvig.

5. In Paragraph 6, Scott Madvig states that the attachment is "what appears to me to be a true and correct copy of a Packing Slip". [sic] This is not sufficient to lay the proper foundation for the copy of the alleged "Packing Slip". [sic]

(Def.'s Mot. Lim. Ex. 1 ¶¶ 1, 2, 5.)

witness have knowledge of the procedure under which the records were created") (internal citations omitted); *Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 702-03 (E.D. Va. 2004) (citing cases holding that a qualified witness must be someone with knowledge of the procedure for the creation and maintenance of the type of record to be admitted). However, the qualified witness need not be the person who prepared the record at issue and need not have personal knowledge of the entries in the record. *Collins*, 143 F.3d at 337-38. The testimony of the qualified witness must, however, show that "it was the regular practice of the activity to base [the record] . . . upon a transmission from a person with knowledge." *Rambus*, 348 F. Supp. 2d at 703 n. 5 (quoting Advisory Committee Notes, 1974 Enactment for Rule 803(6)).

Mr. Madvig states in his declaration that he was the "Custodian of Business Records" at Fulfillment Plus. (Madvig Decl. ¶¶ 2, 7.) Although that conclusory statement does not suffice to establish that Mr. Madvig is a qualified person who may authenticate the Packing Slip, his declaration demonstrates that he does meet the requirements. Mr. Madvig's declaration contains a detailed (although at times difficult to follow) description of the way in which packing slips were created and maintained. (*Id.* at ¶¶ 4-7.) Specifically, Mr. Madvig states that Fulfillment Plus received order information from its customers, including Vector Technologies, "in electronic format via Internet e-mail to [Fulfillment Plus'] on-location computer." (*Id.* at ¶ 2, 4.) This information included the devices to be shipped and shipping and billing information.[3] (*Id.*) Once received from

---

[3] Specifically, the information included: the device(s) and other products to be shipped; the quantity of devices and products to be shipped; the name, address, telephone number, and e-mail address of the recipient; the name, address, phone number, and e-mail address of the person to whom the device or devices were to be billed; and/or the manner of shipment. (Madvig Decl. ¶ 4.) Madvig asserts the source of this information was the email received from the company placing the order. (*Id.* at ¶¶ 4-5.)

the customer, that information was then "electronically imported into a Microsoft Access database, a data management software program" by Mr. Madvig or by another employee. (*Id.* at ¶¶ 4, 11.) The database stored the information and "allowed for the retrieval of data using specific requests made through drafting of a 'query' in the program and allowed the data to be printed in various formats." (*Id.* at ¶ 4.) Mr. Madvig designed the query that produced a "Packing Slip" for each order. (*Id.* at ¶ 5.) He further states that "[i]t was the practice of Fulfillment Plus to print the Packing Slip [for an order] within one business day of receiving [the] order."[4] (*Id.*) Once the original packing slip was printed, the device listed on the slip was packaged and shipped to the listed recipient, usually on the same business day. (*Id.* at ¶ 6.)

Mr. Madvig's declaration is sufficient to establish that he has knowledge of the procedures by which Fulfillment Plus created and maintained packing slips in order to meet the requirements of "custodian or qualified person" under Rules 803(6) and 902(11) of the Federal Rules of Evidence. Mr. Madvig's declaration contains detailed facts describing the procedure; Mr. Madvig himself designed the query upon which the slips were created and printed; and Mr. Madvig or one of his employees had personal knowledge of the shipping information received by email from customers. To the extent Reyes' foundation objections are based on the argument that Mr. Madvig is not a custodian or qualified person, those objections are overruled.

---

[4] In addition to the shipping and billing information, the packing slip typically also included the invoice number assigned to the transaction; the identity of the entity for whom the device was shipped; and the date and time that the packing slip was originally printed. (Madvig Decl. ¶ 5.) Madvig also notes that the Access Database program recorded the date and time that the original packing slip was printed. (*Id.* at ¶ 6.) Any subsequent printing of a packing slip revealed the date and time of the original printing. (*Id.*)

## B.  Other Business Record Exception Requirements.

The next issue is whether the Madvig Declaration fulfills the remaining requirements of Rule

902(11), namely that it state that the record (1) was created "at or near the time of the occurrence";

(2) "was kept in the course of the regularly conducted activity"; and (3) "was made by the regularly

conducted activity as a regular practice."

In addition to the detailed description of the procedures for creating and maintaining packing

slips, Mr. Madvig's declaration contains the following statements:

> 12.    The Fulfillment Plus Access Database, and each and every piece of data
> and/or information contained therein, *were made at or near the time of the*
> *occurrences* of the matters set forth by, or from information transmitted by,
> a person with knowledge of those matters.

> 8.    The Fulfillment Plus Access Database, and each and every piece of data
> and/or information contained therein, was *a business record kept in the*
> *course of regularly conducted activity* by Fulfillment Plus.

> 9.    The Fulfillment Plus Access Database, and each and every piece of data
> and/or information contained therein, was *maintained in the regular course*
> *of the business* of Fulfillment Plus.

> 11.    *It was the regular course of business of Fulfillment Plus for one of its*
> *employees* . . . with personal knowledge of the acts, events, statements,
> conditions, or business studies, including me, *to create the aforementioned*
> *records* or to transmit information thereof to be included in such business
> records, the Fulfillment Plus Access Database, including each and every piece
> of data and/or information contained therein.

(Madvig Decl. ¶¶ 12, 8, 9, 11 (emphasis added).)

Whether or not such boilerplate language is sufficient to meet the requirements of Rules

806(3) and 902(11) (*see United Asset Coverage*, 2006 WL 126623 at *47), there is a problem with

the Madvig Declaration.  Mr. Madvig testifies that the *database*, and not the purported business

record, *i.e.*, the Reyes Packing Slip itself, fulfills the business record exception requirements.

*See* Madvig Decl. ¶¶ 8, 9, 11-13. The gap in the Madvig Declaration is the relationship of the Reyes Packing Slip and the information contained in the database. DirecTV claims that "the paper document is a printout of order and shipping information that was originally received electronically from merchants" (Pl.'s Resp. Mot. Lim. Ex. 1 at 8), but the declaration does not, in fact, say that. Mr. Madvig does not testify that the Reyes Packing Slip was created by entering a "query" into Fulfillment's database. Mr. Madvig states only that the Reyes Packing Slip "appears . . . to be a true and correct copy of a Packing Slip for the order for Rolando Reyes." (Madvig Decl. ¶ 6.) DirecTV has not presented any witness to testify that the Reyes Packing Slip was produced from the database. Although the qualified witness is not required to have participated personally in the creation of the document (*Collins*, 143 F.3d at 337-38), there must be a basis to establish that the document sought to be admitted into evidence is, in fact, a record produced and kept in accordance with the regular practice (Fed. R. Evid. 803(6), 902(11)). However, it is likely that DirecTV can fill this gap. *See DirecTV, Inc v. Clark*, No. Civ. 03-2477 (JBS), 2005 WL 1242313 at *2 (D.N.J. May 25, 2005) (Simandle, J.) (the document at issue was "a duplicate of the electronic records of Fulfillment Plus"). The motion in limine is granted without prejudice to DirecTV's submission of a revised declaration that satisfies all of the requirements or providing a witness to do so.

### C. "Chain of Custody."

In addition to objecting on foundation grounds, Reyes also objects to the declaration on chain of custody grounds. (Def.'s Mot. Lim. Ex. 1 ¶ 6 ("[T]here has been no showing of the chain of custody of the original document in question, nor was there an explanation regarding the computer from which the document allegedly was drawn.").)

DirecTV does not explain where or how it obtained the Reyes Packing Slip. However, if the document has been properly authenticated, there is no chain of custody requirement for the business records exception. *Pieters v. B-Right Trucking, Inc.*, 669 F.Supp. 1463, 1465 (N.D. Ind. 1987); *U.S. v. Bermea*, 30 F.3d 1539, 1574 (5th Cir. 1994) (noting that "any break in the chain of custody goes to the weight of the evidence rather than its admissibility"); *U.S. v. Farmer*, 820 F. Supp. 259, 265 (W.D. Va. 1993) ("Any 'missing links' in the chain of custody are supplied by the presumption of regularity which attaches to business records."). DirecTV states that Mr. Madvig and the Packing Slip were disclosed in DirecTV's initial disclosures pursuant to Rule 26(a)(1) in 2004. (Pl.'s Resp. Mot. Lim. Ex. 1 at 7.) Reyes had ample opportunity to discover how DirecTV obtained the Packing Slip.

### D. "Lack of Trustworthiness."

Fed. R. Evid. 803(6) provides that a record satisfying the requirements of the business record exception is admissible for the truth of the matter asserted "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

Reyes appears to object to the trustworthiness of Mr. Madvig on the basis that his company, Fulfillment Plus, was raided by the federal authorities in May 2001. (Def.'s Mot. Lim. Ex. 1 ¶ 6.) Specifically, Reyes argues the following:

> 7.   Since Mr. Scott Madvig was a part of the criminal enterprise the Declaration does not comply with Rule 803(6) since there is an inherent lack of trustworthiness concerning the source of the information, the method and/or circumstances of preparation because the document was generated by a criminal enterprise and/or by a dishonest person. Plaintiff alludes to said criminal person and/or entity in Paragraph 7 of its Complaint and in Count II of the Complaint based on violations of 18 U.S.C., Section 2511 (Federal

11

Criminal Code). It is believed that Scott Madvig was sued or prosecuted because of his activities.

8.   Defendant is entitled to cross-examine Mr. Scott Madvig in Court to determine his trustworthiness, particularly in connection with any agreements that he has entered into with the Plaintiff and/or governmental agencies for his cooperation.

(*Id.* at ¶¶ 7-8.) Reyes provides no evidence of any criminal prosecution other than the allegations in the Complaint that DirecTV executed a Writ of Seizure with the assistance of local law enforcement on several major distributors of pirate access devices. (Compl. ¶ 7.) DirecTV asserts that it is not aware of any criminal prosecution of Mr. Madvig or Fulfillment Plus. (Pl.'s Resp. Mot. Lim. Ex. 1 at 9.)

Regardless, Reyes' objections are overruled. Reyes does not identify any reason why Mr. Madvig's testimony regarding the procedures used by his company to fill shipping orders is untrustworthy. Whether or not Mr. Madvig's business was subsequently raided, it was in his interest to have a procedure in place that ensured his customers' shipping orders would be filled accurately and efficiently. His declaration describes in detail such a procedure. (Madvig Decl. ¶¶ 3-6.) Reyes implies that an agreement with the government or DirecTV might be evidence of a motive for Mr. Madvig to be dishonest or misleading. (Def.'s Mot. Lim. Ex. 1 ¶¶ 6-8.) However, Reyes does not provide any evidence of such an agreement and does not provide any factual basis to support an inference that Mr. Madvig fabricated the Reyes Packing Slip pursuant to an agreement with the government or DirecTV. Nor does Reyes provide any facts to support an inference that Fulfillment Plus was filling fictional orders or that the information received from customers and entered into the database was done carelessly or fraudulently. Reyes has not demonstrated that the Packing Slip should be barred on lack of trustworthiness grounds.

12

### E.     Reyes' Other Objections.

#### 1.     "General and not Specific" and "Contains Hearsay."

Reyes also objects on the basis that "the Declaration is extremely general and not specific and contains many conclusions and heresay [sic]." (Def.'s Mot. Lim. Ex. 1 ¶ 4.) This objection is overruled. As discussed above, Mr. Madvig's description of the procedures in place for producing the Packing Slip contains significant detail. It is true that the declaration contains conclusions, but the conclusions are supported by facts. Finally, Reyes has not identified any specific part of the Madvig Declaration that he contends is hearsay.

#### 2.     "Best Evidence."

Reyes also objects on the basis that the Packing Slip is not the "best evidence." (*Id.* at ¶ 4.) If DirecTV submits a declaration that establishes that the Reyes Packing Slip is, as it contends, a photocopy of a computer printout of information from an electronic database, that objection will be overruled. A computer printout of information stored on a computer is an "original" for purposes of Fed. R. Evid. 1001(3) and 1002. A photocopy of the original printout is admissible unless "(1) a genuine issue is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Again, it appears likely that DirecTV can resolve this issue.

#### 3.     "Fulfillment Plus" Not Mentioned in Complaint.

Reyes objects on the basis that DirecTV's Complaint did not mention an entity "Fulfillment Plus," but instead referred to "Fulfillment Pirate Group." (Def.'s Mot. Lim. Ex. 1 ¶ 6.)   It is not

13

clear why Reyes thinks this is a basis for objecting to the admission of an exhibit. As previously discussed, DirecTV states that it provided Reyes with the Packing Slip in its Rule 26 initial disclosures, as well as identifying Mr. Madvig and Fulfillment Plus numerous times during discovery. (Pl.'s Resp. Mot. Lim. Ex. 1 ¶¶ 7-8.) This putative objection is overruled.

### 4.    *"Irrelevant and/or Unnecessary."*

Finally, Reyes objects to the Declaration on the basis that much of the information contained in it is "irrelevant and/or unnecessary." (Def.'s Mot. Lim. Ex. 1 ¶ 3.) As discussed above, it is the Exhibit authenticated by the Declaration, not the Declaration as such, that will be admitted in evidence and provided to the jury. Reyes' objection on that basis is overruled.

### III.    Reyes' Motion in Limine to Bar the Sichler Declaration.

Plaintiff's Exhibit 7 is the declaration of Jaime Sichler, an employee of DirecTV, whose responsibilities include supporting DirecTV's anti-piracy efforts. (Def.'s Mot. Lim. Ex. 7, Sichler Decl. at 1.) [Dkt 45.] Exhibits A, B, C, and D to the Sichler Declaration are copies of computer printouts that purport to record the DirecTV account information for Reyes' DirecTV accounts. (*Id.*) DirecTV offers the Sichler Declaration as a business records declaration under Fed. R. Evid 902(11) for the purpose of authenticating Reyes' account and pending account records. Ms. Sichler's description of DirecTV's computerized records system states in relevant part:

It is the regular course of business of DIRECTV, Inc. to maintain a computerized records system of all customer accounts. The computerized records system includes information from communications with the subscriber or their system, as well as information regarding the equipment used by the subscriber, payments received from the subscriber, and an account history reflecting the level of services requested by the

14

subscriber (including pay-per-view events ordered by the subscriber). The entries made in DIRECTV, Inc.'s computerized records system are made by DIRECTV, Inc.'s employees, or from information transmitted by a person with knowledge of the event, who are trained in the procedure for entering data into the computerized records system, or include information downloaded from the subscriber's system.

(Sichler Decl. at 2.)

Reyes' motion in limine directed to the declaration lists eleven objections, many of which are identical to Reyes' objections to the Madvig Declaration. To the extent that Reyes objects to the Sichler Declaration on the bases that: it contains information that is "irrelevant and/or unnecessary" for a business records declaration (Def.'s Mot. Lim. Ex. 7 ¶ 2); it is not the "best evidence" (*id.* at ¶ 3); the declaration contains hearsay (*id.* at ¶¶ 2, 4); and there is "no showing of the chain of custody of the original documents" (*id.* at ¶¶ 6, 8), Reyes' objections are overruled on the same grounds as were the objections to the Madvig Declaration. Reyes' remaining objections can reasonably be construed as arguments that the Sichler Declaration does not meet the requirements of Rules 806(3) and 902(11). The requirements of these rules, and Reyes' other remaining objections, are addressed in turn.

## A. "Custodian or Qualified Person."

Reyes offers the conclusory objection that "[n]one of the four Exhibits [attached to the Sichler Declaration] have been properly authenticated as required by Rule 902(11)." (*Id.* at ¶ 10.) Paragraphs 1, 4, 6, 9, and 11 of Reyes' motion, however, appear to question whether Ms. Sichler is a "custodian or qualified person" under the rules.[5] Reyes objects on the grounds that Ms. Sichler was

---

[5] These objections state as follows:

1.    Said Declaration does not adequately state how and why Ms. Jaime Sichler

15

not employed by DirecTV at the time the documents were created and that Ms. Sichler does not have sufficient knowledge as to how the documents were created and maintained. (*Id.* at ¶¶ 6, 9, 11.)

Reyes' objection that Ms. Sichler was not employed by DirecTV at the time the account information was entered into the computer system is overruled, because the business records exception does not require the qualified witness to have personal knowledge of the record's creation. *Collins*, 143 F.3d at 337-38.

The next issue is whether Ms. Sichler's declaration is sufficient to show that she has knowledge of the creation and maintenance of account information.

Reyes' objections to Ms. Sichler's declaration based on foundation have merit. Ms. Sichler's declaration contains insufficient foundation to establish that she has personal knowledge of the way in which DirecTV's records are created and maintained. Ms. Sichler states only that she is "currently

_____

could testify to the material contained in said Declaration.

4.    The Declaration is very general and not specific . . . .

6.    There is no showing of the chain of custody of the original documents in question, and Ms. Jaime Sichler was not employed by DIRECTV at the time the documents were allegedly generated, namely in 1998-1999.

9.    The documents do not comply with Rule 803(6) in that the Declaration does not show that Jaime Sichler had adequate knowledge to testify regarding documents that predated her employment with DIRECTV by many years.

11.   Said Declaration does not comply with Rule 803(6) since there is an inherit [sic] lack of trustworthiness concerning the source of the information, the method and/or circumstances of preparation, since the documents were generated many years before Jaime Sichler became employed by DIRECTV in its special anti-piracy Department.

(Def.'s Mot. Lim. Ex. 7 ¶¶ 1, 4, 6, 9, 11.)

16

employed by DIRECTV," that her responsibilities "include supporting DIRECTV's anti-piracy efforts," and that she is "a custodian or other qualified witness." (Sichler Decl. at 1.); *see* Fed. R. Civ. P. 56(e) (requiring that affidavits submitted in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). The categories of information she states are included in the record keeping system are listed on the printouts. Anyone looking at the printouts could state that the system includes these categories. In addition, nowhere does she state that the attached exhibits were created and maintained pursuant to the recordkeeping procedure.

This does not mean, however, that she could not testify as to the authenticity of the account printouts. A revised declaration or live testimony (by Ms. Sichler or another witness) could authenticate the account records as business records.

## B.    Hearsay Objection to "References to Conversations" in Exhibit A.

Reyes' motion also objects to Exhibit "A" to the Sichler declaration, which is the purported record of his active account information, on the grounds that it contains double hearsay. (Def.'s Mot. Lim. Ex. 7 ¶¶ 5, 7.) In addition to general customer and payment information, Exhibit A also contains a section for communications with the account holder. (Sichler Decl., Ex. A.) There are boxes that appear to contain notes of customer service representatives' conversations with Reyes regarding his account. (*Id.*) However, assuming that Exhibit A can be authenticated as a business record, those notes are part of the business record, which is an exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Pursuant to Rule 803(6), the records can be admitted for the truth of what they

17

reflect, that is, that Reyes told the DirecTV representative certain information. For example, the note for 04/21/02 states, "cust was tring [sic] to order ppv online and got a message that the rating limit had been exceeded . . . ." (Sichler Decl., Ex. A.) The business record exception allows the record to be admitted as evidence of the fact that the conversation took place and that the record contains a summary of what was said. It is not clear at this time if DirecTV will attempt to introduce the substance of any of the conversations for the truth of any statement by Reyes, rather than for the fact that he made the statement to DirecTV's representatives. That issue can be addressed at trial.

## IV.    Reyes' Motion in Limine to Bar the Turner Declaration.

Plaintiff's Exhibit 8 is the declaration of Bruce Turner, the President of Global Capital Corporation, the company that sold products under the brand name Vector Technologies. (Def.'s Mot. Lim. Ex. 8, Turner Decl. ¶ 2.) [Dkt 46.] Attached to the Turner Declaration is a receipt that purports to record Reyes' December 2000 purchase of the "Next Gen" and "UL PRO with X Combo" devices. (Turner Decl., Ex. A.)

Reyes' motion in limine lists nine objections, many of which are identical to Reyes' objections to the Madvig and Sichler Declarations. To the extent that Reyes objects to the Turner Declaration on the bases that:  the attachment is not the "best evidence" (Def.'s Mot. Lim. Ex. 8 ¶ 2); the declaration and the attachment contain hearsay (*id.* at ¶¶ 3, 5); much of the information in the declaration is "irrelevant and/or unnecessary" (*id.* at ¶ 5); "Vector Technologies" was not mentioned in the Complaint (*id.* at ¶ 6)[6]; there was no showing of chain of custody (*id.* at ¶ 6); and the testimony

---

[6] Although Reyes' objection here mentions Vector Technologies rather than Fulfilment Plus, the current argument mirrors his previous argument and the same reasoning applies.

has a "lack of trustworthiness" (*id.* at ¶ 7, 8), Reyes' objections are overruled for the same reasons as were the objections to the Madvig and Sichler Declarations. Reyes' remaining objections can reasonably be construed as arguments that the Turner Declaration does not meet the business record exception and authentication requirements of Rules 803(6) and 902(11), and that the Turner Declaration should be excluded because it was produced to Reyes' attorney on January 20, 2006, after the discovery cutoff date of November 30, 2004. (Def.'s Mot. Lim. Ex. 8 ¶¶ 1-4, 9.)

## A. Business Records Exception.

Several of Reyes' objections to the Turner Declaration, like his objections to the Madvig and Sichler Declarations, can be construed as arguing that the Turner Declaration fails to meet the requirements of Rules 806(3) and 902(11).[7] (*See Id.* at ¶¶ 2, 3, 4.) Mr. Turner's description of Vector Technologies' order and record-keeping system is as follows:

> Customers of the Vector website made their own purchases via an online order form and the receipt was dynamically generated and stored in the Vector database. The information contained in this record was kept by Vector in the regular course of business, and it was the regular course of business of Vector to maintain the database that dynamically stores online orders made by customers, and the record was made at the time of the order. The information contained in this record was generated by an ecommerce online order system, whereby the customer placed his/her own order

---

[7] These objections state:

2.   No foundation has been laid for the testimony of Mr. Bruce Turner . . . .

3.   The Declaration is extremely general and not specific . . . .

4.   Said Declaration does not adequately state how and why Mr. Turner could testify to the material contained in said Declaration. It does not state that the material is true, but states that it is true to the best of his knowledge.

(Def.'s Mot. Lim. Ex. 8 ¶¶ 2, 3, 4.)

and a receipt was dynamically generated and stored in a database controlled by
Vector in the regular course of business.

(Turner Decl. ¶ 2-3.) Mr. Turner goes on to state that the record attached as Exhibit A to his
declaration "is retrieved from that database of electronic order receipt generated at the time the
customer placed the order." (*Id.*)

The issue is whether Mr. Turner's declaration is sufficient to show that he is a "custodial or
qualified person" (*i.e.*, he has knowledge of the creation and maintenance of account information)
and whether his declaration meets the other requirements of a business records declaration. Mr.
Turner claims to have been the President of the d/b/a Vector Technologies at one time, although he
does not state when. (*Id.* at ¶ 2.) He also states that he was the "custodian of the customer database
for Vector" while he was the company's president, although he does not describe what that means
or what his responsibilities were. (*Id.*)

Reyes' objections to Mr. Turner's declaration based on foundation have some merit.
Specifically, Mr. Turner's declaration fails to include any facts showing that he has personal
knowledge of the procedure by which Vector Technologies created and maintained the records.
Simply saying that he was at some unspecified time a "custodian" of the database does not tell the
court how he knows the procedure by which records were created and maintained in that database.
Again, this appears to be a gap that DirecTV could remedy. A revised declaration or live testimony
could establish that knowledge; but the declaration as submitted is insufficient.


**B.      Other Objections to the Turner Declaration and the Receipt.**

Reyes also objects to Exhibit A to the Turner Declaration on the basis that "[t]he second page

20

[of the attachment] clearly is not a business record, but was generated by an unknown person at an unknown time." (Def.'s Mot. Lim. Ex. 8 ¶ 9.) Reyes has given no reason to support his contention that the second page of Exhibit A is not part of the record maintained by Vector.

Reyes also objects that the Turner Declaration and the attached receipt were not produced to Reyes until after the final discovery cutoff date of November 30, 2004. (*Id.* at ¶ 1.) That objection will be addressed in connection with Reyes' Motion to Quash Subpoena to American Express TRS Company, Inc.

## CONCLUSION

For the foregoing reasons, Defendant's Motions in Limine as to Plaintiff's Exhibits 1, 7 and 8 are granted without prejudice to DirecTV's submitting revised declarations or presenting witnesses to testify live at trial to provide authentication for the proposed trial exhibits. DirecTV should bear in mind that "[a] party intending to offer a record into evidence under [Rule 902(11)] must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them." Fed. R. Evid. 902(11). Rule 902(11)'s notice requirement "is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Advisory Committee Notes, 2000 Amendments to Rule 902. Any revised declaration must comply with that requirement.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

March 1, 2006

21